1997 OK 146

**STATE of Oklahoma, ex rel. OKLA-HOMA BAR ASSOCIATION, Complainant,**

v.

**William D. GIESSMANN, Respondent.**

**No. 4177.**

Supreme Court of Oklahoma.

Nov. 25, 1997.

Mike Speegle, Oklahoma Bar Association, Oklahoma City, for Complainant.

Gloria Miller White, Edmond, for Respondent.

HARGRAVE, Justice.

¶ 1 The Complainant, Oklahoma Bar Association (Bar Association/General Counsel), has charged the Respondent, William Giessmann, with a violation of Rule 1.3 [1] and Rule 1.4 [2] of the Rules of Professional Conduct for failure to diligently represent and communicate with a client.[3] The parties submitted Stipulations of Fact and Conclusions of Law with Agreed Recommendations for Discipline. The Professional Responsibility Tribunal (PRT) adopted the stipulations of fact and conclusions of law as part of its findings. A review of the record reveals the stipulated facts and conclusions of law to be accurate. The stipulations reflect that Giessmann has been a member of the Oklahoma Bar Association since 1974, and has been previously disciplined. As a result of these previous bar complaints, coupled with the present complaint, Giessmann is suspended from practice for a period of ninety days. Costs of $413.63 are also imposed.[4]

## FACTS

¶ 2 Cleveland Hyman's mother died on March 17, 1990. A few months later on July 30, 1990, Hyman's father also died. Hyman's parents had quit claim deeded to their children, Hyman and two siblings, as joint tenants, several properties which were under contracts for deeds. The parents had reserved a life estate for themselves. Hyman was attempting to close on one of those properties, but was unable to do so because of a problem with the title. The lawyer that had prepared the title opinion believed a probate was needed to cure the title problems. Hyman then retained respondent in November 1990 and paid respondent $1,500.00 to file the probate. On April 10, 1991, Respondent filed a probate in Oklahoma County. Respondent did nothing further on the probate. Respondent also failed to keep Hyman advised of his inaction in this matter.

¶ 3 In May 1994, Hyman was forced to retain another attorney concerning the unfinished legal matter. Although it was the opinion of this subsequent lawyer that a probate was unnecessary, he filed pleadings in the probate, and on July 20, 1994, an Order Allowing Final Account and Distribution of Assets was entered. Hyman was then able to convey clear title to the property. Respondent has repaid Hyman all of the $1,500.00 plus interest.

¶ 4 Respondent was admitted to the practice of law on June 26, 1974. During the first 13 years of practice, the Oklahoma Bar Association did not receive a single complaint concerning Respondent. In 1987, Respondent lost a major client and his practice quickly declined. This decline resulted in financial problems for Respondent.

¶ 5 From 1987 until 1992, the nature of respondent's practice changed. Respondent accepted too many cases which resulted in his neglect of some legal matters entrusted to him. This resulted in previous discipline in the form of a private reprimand and a public censure. Vol. 59 No.48 Okla. Bar Journal, Pg. 3581–3582, December 24, 1988.

1. Rule 1.3, 5 O.S.1991, Ch. 1, App. 3–A provides:
   A lawyer shall act with reasonable diligence and promptness in representing a client.

2. Rule 1.4. 5 O.S.1991, Ch. 1, App. 3–A provides:
   (a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.
   (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

3. The Bar Association originally charged a violation of Rule 1.3, Rule 1.4 and Rule 8.4. Rule 8.4 pertains to conduct involving dishonesty, fraud, deceit or misrepresentation. This charge was dismissed pursuant to stipulation of the parties.

4. Rules Governing Disciplinary Proceedings, Rule 6.16, 5 O.S.1991, Ch. 1, App. 1–A.

Since 1994, the OBA has not received any additional complaints against respondent.

## RECOMMENDATIONS AND FINDINGS OF THE PROFESSIONAL RESPONSIBILITY TRIBUNAL

¶6 After hearing the foregoing at the tribunal hearing, the three members of the Professional Responsibility Tribunal concluded that the respondent's conduct violated Rule 1.3 and Rule 1.4 of the Rules of Professional Conduct, 5 O.S. Ch. 1, App. 3–1 (Supp. 1995), and Respondent could be disciplined as provided in the Rules Governing Disciplinary Proceedings, 5 O.S. Ch. 1, App. 1–A (1995). The Bar dismissed a claim of a Rule 8.4(c) violation. The parties agreed to a private reprimand, and the tribunal approved the recommendation for discipline.

## STANDARD OF REVIEW

¶7 In *State ex rel. Oklahoma Bar Association v. Todd*, 1992 OK 81, 833 P.2d 260, 262, we set out the standard of review in attorney disciplinary proceedings. This Court held:

> In attorney disciplinary proceedings this Court's determinations are made de novo. The ultimate responsibility for deciding whether misconduct has occurred and what discipline is warranted if misconduct is found rests with us in the exercise of our exclusive original jurisdiction in bar disciplinary matters. Accordingly, neither the findings of fact of a Professional Responsibility Tribunal (PRT) nor its view of the evidence or credibility of witnesses are binding on us and recommendations of a PRT are merely advisory. (citations omitted)

¶8 In addition, to warrant a finding against a lawyer in a contested case, the charges of misconduct must be established by clear and convincing evidence. Rule 6.12(c) of the RGDP; *State ex rel. Oklahoma Bar Association v. Thomas*, 1995 OK 145, 911 P.2d 907, 909. With these standards in mind we turn to a discussion of the misconduct charged.

## VIOLATION OF RULES OF PROFESSIONAL CONDUCT AND RULES GOVERNING DISCIPLINARY PROCEEDINGS

■ ¶9 Rule 1.3 of the Rules of Professional Conduct states: "A lawyer shall act with reasonable diligence and promptness in representing a client." Respondent did not act with reasonable diligence in representation of his client. Respondent agreed to represent Mr. Hyman in the probate, but his only action in the matter was to file the initial papers. He and did nothing further in the case. We do not believe there was any sinister activity in Respondent actions, but that he had merely taken on more than he could handle. Therefore, there was a clear violation of Rule 1.3 of the Rules of Professional Conduct.

■ ¶10 Rule 1.4 of the Rules of Professional Conduct provides: "A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information." Respondent admitted he was not as diligent as he should have been in keeping his client informed in the present matter. Respondent's failure to keep his client reasonably informed and to comply with requests for information is a violation of rule 1.4 of the Rules of Professional Conduct.

■ ¶11 Rule 8.4 pertains to conduct involving dishonesty, fraud, deceit or misrepresentation. This charge was dismissed pursuant to stipulation of the parties. Upon review of the facts in this matter we find that Respondent did not violate rule 8.4, but was merely not diligent in representing his client, and failed to keep his client informed.

¶12 This Court has imposed varying degrees of discipline upon lawyers who have neglected client matters. A listing of many of the cases is contained in *State ex rel. Oklahoma Bar Association v. Busch*, 1992 OK 68, 832 P.2d 845, 847–848. Additionally, in *State ex rel. Okla. Bar Association v. Thompson*, 1993 OK 144, 864 P.2d 339, an attorney was suspended for 90 days for, among other things, failing to keep his client adequately informed.

## FINDINGS OF THIS COURT AND DISCIPLINE

¶ 13 Given Respondent's behavior, we cannot agree with him that a private reprimand is sufficient to satisfy the goals of discipline. We agree with the PRT regarding Count I and find the Respondent violated Rules 1.3 and 1.4 of the Rules of Professional Conduct. Based on the facts before this Court, we find a ninety-day suspension to be the appropriate discipline in light of his having been twice previously disciplined. Accordingly, Respondent is suspended from the practice of law for a period of ninety days to begin on the day this opinion becomes final. The costs of the proceedings in this disciplinary action in the amount of $413.63 are to be paid by the Respondent within ninety days from the day this opinion becomes final.

**RESPONDENT SUSPENDED FROM THE PRACTICE OF LAW FOR NINETY DAYS AND ORDERED TO PAY COSTS.**

¶ 14 KAUGER, C.J., and HODGES, LAVENDER, SIMMS and ALMA WILSON, JJ., concur.

¶ 15 SUMMERS, V.C.J., concurs in part and dissents in part.

¶ 16 OPALA and WATT, JJ., dissent.

¶ 17 OPALA, Justice, dissenting.

I would impose on this respondent a longer period of suspension. For my views about the proper quantum of discipline to be imposed on repeat bar offenders, see *State ex rel. Oklahoma Bar Ass'n. v. Holden,* 1996 OK 88, 925 P.2d 32, 38 *(Opala, J., dissenting); State ex rel. Oklahoma Bar Ass'n. v. Wolfe,* 1996 OK 75, 919 P.2d 427, 435 *(Opala, J., dissenting).*