1998 OK 91

**STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**Marjorie PATMON, Respondent.**

**No. 4292.**

Supreme Court of Oklahoma.

Sept. 22, 1998.

Rehearing Denied Dec. 7, 1998.

Original Proceeding for Attorney Discipline.

Allen J. Welch, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, Oklahoma, for Complainant.

## OPINION

WATT, Justice.

¶ 1 This matter involves disciplinary proceedings against Marjorie Patmon. On August 19, 1997, the General Counsel of the Oklahoma Bar Association (OBA) filed a complaint against respondent alleging three (3) counts of professional misconduct. Those counts will be referred to as the "Hardeman Matter" (Count I), the "Unauthorized Practice of Law" matter (Count II), and "Respondent's Failure to Respond to the Oklahoma Bar Association" matter (Count III). At respondent's hearing on September 11, 1997, the Oklahoma Bar Association presented witnesses and evidence concerning the charges. Despite the fact that respondent had been given proper notice of the hearing, she failed to appear as ordered and failed to file any responsive pleading to the complaint. For the purpose of enhancing discipline, the trial panel was advised that respondent had been disciplined by this Court on two (2) previous occasions. On October 11, 1993, respondent received a private reprimand from this Court for professional misconduct involving neglect. On May 6, 1997, this Court suspended respondent for two (2) years and (1) day for numerous ethical violations.

¶ 2 The trial panel found that the allegations in Counts I and III were proved by clear and convincing evidence, however, they found the allegations in Count II were not proven by clear and convincing evidence to violate the *Oklahoma Rules of Professional Conduct* ("ORPC"), 5 O.S.1991, ch. 1, app. 3–A. The trial panel recommended that respondent, Marjorie Patmon, be disbarred and that her name be stricken from the Roll of Attorneys and that she be assessed the costs of these proceedings.

¶ 3 In bar disciplinary cases, this Court exercises exclusive original jurisdiction as a licensing agent. *State ex rel. OBA v. Gassaway,* 1991 OK 33, 810 P.2d 826, 830 (Okla.1991). The ultimate responsibility for deciding whether misconduct has occurred and what discipline is appropriate rests with this Court. *Id.* "Before we may impose discipline upon an attorney, the charges must be established by clear and convincing evidence." *Id.,* citing Rule 6.12 of the *Rules Governing Disciplinary Proceedings* ("RGDP"), 5 O.S.1991, ch. 1, app. 1–A; *State ex rel. OBA v. Braswell,* 1983 OK 63, 663 P.2d 1228, 1232 (Okla.1983). Our review of the record is *de novo. State ex rel. OBA v. Wolfe,* 1996 OK 75, ¶ 26, 919 P.2d 427, 432.

## COUNT I

### *THE HARDEMAN MATTER*

¶ 4 Francille Hardeman filed a Merit Protection claim on July 28, 1992, which the Merit Protection Commission dismissed by order dated December 21, 1992. An application or request for an administrative rehearing, reopening, or reconsideration of a Merit Protection Commission order must be filed within ten (10) days of the entry of the order, 75 O.S.1991 § 317(A). Thus, an application for judicial review of the order had to be instituted not more than thirty (30) days after Hardeman was notified of the Order, January 21, 1993, 75 O.S.1991 § 318(B)(2).

¶ 5 On April 26, 1995, Hardeman hired respondent to represent her in an appeal to the District Court from an adverse finding of a claim with the Oklahoma Merit Protection Commission. Notwithstanding that Hardeman's time to appeal had expired several years before respondent was hired, respondent accepted $5700 as an attorney fee that same day.

¶ 6 Respondent advised Hardeman that until the attorney fees were paid in full, she would not perform any work on the appeal. Hardeman borrowed the $5700 and because her home was paid for, she gave a first mortgage as security for the repayment of the loan.

¶ 7 Respondent did nothing for her client. She totally failed, neglected, and refused to seek administrative or judicial review of the Merit Protection Commission order. Respondent failed to communicate with Hardeman regarding her representation. Additionally, respondent never informed Hardeman that the statute of limitations had run on the Merit Protection claim some three (3) years and three (3) months *prior to the date respondent was retained.*

¶ 8   Eventually, Hardeman contacted other legal counsel and advised the attorney of the Merit Protection Commission appeal and her dissatisfaction with respondent's representation. The attorney, Robert W. Cole, wrote respondent a letter on behalf of Hardeman and requested an accounting of the $5700 and to tender the balance of the funds to his office.

¶ 9   Nearly one month later, respondent responded in writing to the letter and agreed to prepare an accounting in five (5) days and to return Hardeman's money. Respondent wholly and completely failed to do either of the things she said she would do. As of the date of the hearing in this proceeding, Hardeman was still making monthly payments on the $5700 loan.

## COUNT II

### UNAUTHORIZED PRACTICE OF LAW

¶ 10   In Count II of the Complaint, the OBA alleged respondent engaged in the unauthorized practice of law while under administrative suspension (June 27 – September 15, 1995) for failure to comply with Mandatory Continuing Legal Education requirements. Complainant alleged that on or about September 11, 1995, respondent prepared and filed a Motion to Recuse Judge Clinton Dennis from presiding over a divorce proceeding, *Graham v. Graham*, a copy of which was admitted into the record.

¶ 11   Additionally, testimony was presented by Christine Gronlund, Attorney at Law, who represented one of the parties in the *Graham* custody matter. The OBA alleged that because the motion to disqualify was faxed to Gronlund with a cover sheet bearing respondent's name and because respondent was, on occasion, in the courtroom gallery during some of the *Graham* proceedings, that respondent had engaged in the unauthorized practice of law. The Motion to Recuse was signed by another attorney whose office was in the same building as respondent's.

¶ 12   Gronlund testified at the hearing before the Trial Panel that she was not aware of any time during the dates of the administrative suspension, that respondent had 1) entered an appearance in the *Graham* matter, 2) signed any pleadings, 3) appeared as a lawyer for the purpose of representing a client 4) addressed the court as a lawyer, or 5) gave legal advice to anyone. The trial panel considered the evidence and testimony presented and found that the Oklahoma Bar Association had failed to establish by clear and convincing evidence that respondent violated Rule 5.5, Oklahoma Rules of Professional Conduct.[1]  We agree with the trial panel's findings and conclusions as to Count II.

## COUNT III

### RESPONDENT'S FAILURE TO RESPOND TO THE OKLAHOMA BAR ASSOCIATION

¶ 13   In October, 1996, the Office of the General Counsel received a grievance from Carlos Graham. In accordance with Rule 5.2, Rules Governing Disciplinary Procedure, on November 21, 1996, the Office of the General Counsel mailed a letter to respondent requesting a written response to the allegations set forth in Graham's grievance letter. Respondent failed to respond to the November 21, 1996 request. On December 12, 1996, the Office of the General Counsel mailed respondent a certified letter advising her that if she failed to contact the General Counsel's office within five (5) days, a subpoena requiring her sworn testimony would be issued. The record reflects that respondent received, accepted, and signed for the letter.

¶ 14   On November 4, 1996, the Office of the General Counsel received a grievance from Attorney Robert W. Cole against respondent. In accordance with Rule 5.2, Rules Governing Disciplinary Procedure, on December 2, 1996, the Office of the General

---

1.   Rule 5.5. Unauthorized Practice of Law.
     A lawyer shall not:
     (a) practice law in a jurisdiction where doing so violates the regulation of the legal profession in that jurisdiction; or

     (b) assist a person who is not a member of the bar in the performance of activity that constitutes the unauthorized practice of law.

Counsel mailed a letter to Respondent requesting a written response pertaining to the alleged misconduct set out in Cole's grievance letter. The letter advised respondent to respond within twenty (20) days after service. Respondent neglected to respond to the December 2, 1996, letter. On January 3, 1997, a certified letter was mailed to respondent requesting a response within five (5) days and that if she did not respond, a subpoena would be served upon her. The record reflects that this certified letter was marked "unclaimed" and returned to the Office of the General Counsel. The post office attempted delivery of this letter on three (3) separate occasions without success.

¶ 15 Thereafter, several subpoenas were issued for respondent's appearance. According to the testimony of Tony Blasier, an investigator with the Office of the General Counsel, a private process server failed on at least two (2) occasions to secure service on respondent. For that reason, a subpoena was obtained by the General Counsel's office on May 7, 1998, and it was personally served upon respondent by Mr. Blasier and Robert D. Hanks, also an investigator for the General Counsel's office.

¶ 16 On May 14, 1997, the day of the scheduled deposition, respondent failed to respond to the Subpoena Duces Tecum as ordered. Respondent neglected to contact the General Counsel's office and seek a continuance. Furthermore, respondent did not file a request with this Court for a postponement of the same. On that same day, an unidentified person hand-delivered to the receptionist at the Oklahoma Bar Center, a note handwritten by respondent stating that she was unable to appear due to prior commitments and the limited amount of time that she could be available.

¶ 17 The following is the testimony of Investigator Blasier at the September 11, 1997, hearing before the PRT:

Q: Can you briefly relate what transpired upon service of the subpoena to Ms. Patmon?

A: Ms. Patmon was served in the office outside of Judge Carol Hubbard's chambers at the Oklahoma County Courthouse by Robert Hanks and myself. The way the service occurred was that Mr. Hanks and I approached Ms. Patmon, Mr. Hanks handed Ms. Patmon the subpoena, identified himself, told her that that was a subpoena for her deposition and handed the subpoena to her.

Q: What was her response?

A: Without even looking at the subpoena, her response was, I can't be there.

¶ 18 Respondent's failure to either appear at the hearing or respond to these proceedings establish by clear and convincing evidence that respondent's behavior constituted wilful and deliberate disregard of the authority of the Professional Responsibility Tribunal and of this Court. Considering respondent's failure to cooperate with the Oklahoma Bar Association and the Trial Panel, the timing of the delivery of the May 14, 1997, handwritten note along with the testimony of Investigator Blasier at the September 11, 1997, hearing, this Court finds respondent's behavior clearly violated the Oklahoma Rules of Professional Conduct. Rule 8.1(b) states in pertinent part that a lawyer in connection with a disciplinary matter shall not "knowingly fail to respond to a lawful demand for information from [a] ... disciplinary authority ..." and Rule 5.2, Rules Governing Disciplinary Procedure. We concur in the Trial Panel's conclusion that respondent never intended to obey the subpoena or otherwise recognize the lawful authority of this Court.

### RULE VIOLATIONS

¶ 19 Respondent's acceptance of $5,700 from Francille Hardeman more than three years after the statute of limitations had barred Hardeman's claim was a violation of Rules 1.1 and 1.2, ORPC, which required respondent to provide her client with competent and diligent representation. Respondent also violated Rules 1.4(a) and (b), ORPC, by failing to keep Hardeman informed of the status of her matter. In addition, respondent failed to deposit the $5,700 she received from Hardeman in her trust account.

¶ 20 The record reflects that respondent has failed to properly respond to grievances on at least eight occasions, and has consistently refused to accept responsibility for her misconduct. The pattern of misconduct evidenced by respondent has, as found by the Trial Panel, "been persistent and pervasive." Such misconduct shows an "indifference to legal obligation." *State of Oklahoma ex rel. Oklahoma Bar Association v. Wolfe,* 1993 OK 84 ¶ 18, 864 P.2d 335.

### DISCIPLINE

■ ¶ 21 As to the appropriate punishment for respondent, a determining factor is her history of professional misconduct. On October 11, 1993, in SCBD # 3759, we issued Respondent a private reprimand and ordered her to pay restitution. On May 6, 1997, in SCBD # 4166, we ordered Respondent be suspended for two years and one day and ordered to pay costs. The case before us presents very serious ethical violations and warrants the most severe discipline that this Court can impose upon a lawyer.

¶ 22 The trial panel concluded and this Court agrees that respondent's handling of the Hardeman appeal was neither skillful nor diligent and was, in fact, virtually non-existent since the appeal for which respondent took a $5,700 retainer fee was never filed. Furthermore, respondent failed to place the retainer fee in her trust account, to make an accounting of the same to the client, and to refund the retainer fee at the request of her new counsel. The mishandling of this case alone warrants extreme disciplinary measures to be sanctioned against respondent.

¶ 23 The trial panel found and we agree that the evidence presented in Count III of the complaint are true. Respondent failed to cooperate with the Oklahoma Bar Association throughout the duration of this proceeding. Respondent has been disciplined in the past for the same ethical violations thus establishing a pattern of intentional and wilful acts of misconduct.

¶ 24 The evidence shows that respondent has repeatedly caused significant damage to her clients through neglect, inattention, and indifference to the consequences of her ac-

tions. Time after time she has failed to properly safeguard, protect, and account for funds entrusted to her by her clients. Respondent has failed to cooperate with the Oklahoma Bar Association at any level during this entire proceeding. As in respondent's previous disciplinary proceedings, she has refused to acknowledge or address the allegations against her. Respondent has displayed an attitude of indifference and arrogance which brings disrespect to, and insults the dignity of, this honorable profession and to this Court.

¶ 25 The Trial Panel recommended Respondent be disbarred and her name be stricken from the Roll of Attorneys and the costs of this proceeding be assessed against her. We agree with the Trial Panel's recommendation.

¶ 26 Our responsibility in a bar disciplinary proceeding "is not to punish but to inquire into the lawyer's continued fitness, with a view toward safeguarding the interest of the public, the courts, and the legal profession." *State ex rel. Oklahoma Bar Association v. Adams,* 1995 OK 17 ¶ 4, 895 P.2d 701, 704. Respondent's pattern of repeated professional misconduct calls for nothing less than respondent's disbarment from the practice of law. Therefore, this Court orders that respondent be disbarred from the practice of law. Respondent is further ordered to pay the costs of this proceeding in the amount of $481.55 within thirty (30) days of the date this opinion becomes final.

RESPONDENT BE DISBARRED AND ORDERED TO PAY COSTS.

¶ 27 KAUGER, C.J., SUMMERS, V.C.J., HODGES, LAVENDER, HARGRAVE and WATT, JJ., concur.

¶ 28 ALMA WILSON, J., concurs in part, dissents in part.

¶ 29 SIMMS and OPALA, JJ., disqualifed.